## G. R. Johnson v. The State.

No. 828.   Decided December 21, 1910.

Rehearing Denied February 8, 1911.

**1.—Theft of Cattle—District Judge—Exchange of Judges.**

Under the Constitution of this State district judges are authorized to exchange, and where, upon trial of theft of cattle, the defendant moved to retire a judge who was holding court in place of the regular judge, the motion was properly overruled.  Distinguishing Oates v. State, 56 Texas Crim. Rep., 571.

**2.—Same—Continuance—Diligence—Discretion of Court.**

Where, upon trial of theft of cattle, the residence of one of the absent witnesses could not be ascertained, and the whereabouts of the other was doubtful, and it was wholly unlikely that the last witness would have testified that he saw defendant sign the check which the latter introduced in evidence, and the application for a subpœna did not disclose his name, there was no error in overruling the motion.

**3.—Same—Newly Discovered Evidence.**

Where, upon trial of theft of cattle, the alleged newly discovered testimony only had reference to the fact that the check which the defendant introduced in evidence was regular but the inquiry was whether this check had been given to the owner by defendant in payment of the alleged animal, the alleged newly discovered testimony was wholly immaterial.

**4.—Same—Sufficiency of the Evidence.**

Where, upon trial of theft of cattle, the evidence sustained the conviction, the same will not be disturbed on appeal.

**5.—Same—Ex Parte Papers—Practice on Appeal.**

Where, upon appeal from a conviction of theft of cattle, there was attached to the motion for rehearing in the Court of Criminal Appeals some original papers which did not go to the jurisdiction of the court nor come within the spirit or letter of matters which had heretofore been entertained by this court, the same could not be considered.  Distinguishing Speer v. State, 26 Texas Crim. App., 173; 9 S. W. Rep., 358.

Appeal from the District Court of Archer.   Tried below before the Honorable Jo A. P. Dickson, presiding, in exchange of the regular judge.

Appeal from a conviction of theft of cattle; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*W. E. Forgy* and *Taylor, Jones & Humphrey,* for appellant.—On question of continuance:  Murphy v. State, 51 S. W. Rep., 940; Tull v. State, 55 S. W. Rep., 61; Clark v. State, 45 S. W. Rep., 576; Richards v. State, 34 Texas Crim. Rep., 277, 30 S. W. Rep., 229; Speer v. State, 26 Texas Crim. App., 173, 9 S. W. Rep., 358; Keys v. State, 131 S. W. Rep., 1068; Cockrell v. State, id., 221.

*C. E. Lane,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—By indictment returned into the District Court

of Archer County on the 5th day of April of this year, appellant was charged with the theft of one head of cattle, the property of J. A. Pollan, which was then and there held by J. R. Pollan and Homer Castle for the said J. A. Pollan. Thereafter, on the 13th day of the same month, appellant was convicted on the charge preferred, and his punishment assessed at confinement in the penitentiary for a period of two years.

The evidence showed that up to about the middle of December appellant had for several years resided in Ellis County, and that he had a small place not far from a large pasture owned and occupied by Pollan and Castle; that on about the 18th or 19th day of December of last year he shipped nineteen head of cattle from the town of Ennis to Dundee, in Archer County; that among this lot of cattle was a small Jersey heifer which had undoubtedly been the property of J. A. Pollan, which Pollan claimed he had never sold this property to appellant or any one else. It was appellant's contention that he had bought the animal a short time before the shipment from Pollan. It was shown by the testimony of both J. R. Pollan and Homer Castle that appellant had stated a short time after the animal was shipped that he had cut out this animal and left her at what is known as the Gwines place in Ellis County. Appellant claimed on the trial to have paid for this animal by means of a check on the Ennis National Bank, dated November 29, 1909, said check being made payable to J. A. Pollan or bearer, which was produced in evidence and shown to have been paid through the Peoples' National Bank of Ennis in December 31, 1909. This check bore no indorsement, but the proof was that checks of appellant made payable to bearer were not ordinarily, if ever, required to be indorsed. Pollan definitely and positively denied ever having sold the animal to appellant and that he had received any check for same, or that he had ever had any connection with the check. The proof further showed that soon after being arrested appellant claimed to have paid for the animal in cash, giving as a reason why he knew he had so paid for her that he had borrowed part of the money from his wife who was with him at the time. Mrs. Johnson was also introduced, who testified to the purchase of the animal on the day named and the payment therefor by check. She also admitted that she had, when the charge was first brought against her husband, stated that her husband had bought the animal and that she had let her husband have part of the money to pay for her. Both appellant and his wife, however, state that at the time the charge was first brought, in view of the suddenness of the same and their residence among strangers, they were greatly upset, and did not at once recollect the correct method of payment until some time thereafter appellant found this check with other papers which he had thrown into an old stove, when, upon seeing the check, their memories were refreshened and they remembered the true facts. This check, it should be further stated, was not marked paid until the 31st of December thereafter. Some sus-

picion was thrown on the check by reason of the fact that it appeared to have been written, or at least some parts of it, with different pencils and probably in a different handwriting. There is no doubt that the check was signed by appellant and no doubt of its payment at the time when it purports to have been paid, but it was a question of great doubt as to whether it was ever given to Pollan and cashed by him, or whether in fact he ever knew anything about it. The evidence further shows that soon after the cattle were shipped appellant returned to Ellis County, and while there the owner of the animal charged appellant in substance with the theft. Appellant at the time said he did not know whether the animal was in Archer County or not, but when he went home he would ascertain and advise him. This statement, however, was denied by appellant. This seems not to have been satisfactory to Mr. Pollan, and on that day he wrote to the sheriff of Archer County and probably a constable near Dundee about his cow, which soon led to his receiving information from the constable that the animal was in appellant's possession in Archer County. Soon thereafter Mr. Pollan went to Archer County, identified the animal, an affidavit was made against appellant, and in this manner the prosecution arose. There seems to have been an examining trial in which the owner of the animal testified and a son of appellant's, whose testimony will hereafter be noted, also testified. We have not undertaken to give a detailed statement of the facts, which are quite lengthy and in a state of irreconcilable conflict, but this statement will be sufficient to illustrate the questions discussed:

1. When the case was called for trial Hon. Jo A. P. Dickson, one of our district judges, appeared and assumed to act and did act as district judge in the trial of the case. Thereupon appellant filed what is called a plea in limine to the effect that Hon. A. H. Carrigan was the legal and duly elected district judge of the Thirtieth Judicial District, of which Archer County is a part; that while he was absent, he was not in any manner disqualified from hearing, trying and determining said cause, and that of his own volition he had applied to Judge Dickson, District Judge of the Fiftieth District, to try the case. It was claimed that Judge Dickson was not qualified to try the case, was not present by reason of any appointment or selection of any kind, and had no authority or right to hear and determine the cause. We think this plea was unavailing. Under the Constitution of this State district judges are authorized to exchange. The Constitution says they may exchange and that they shall do so when required by law. Whether at the time Judge Carrigan was holding court for Judge Dickson or for some one else is not made apparent. We think it may often happen that a district judge, who has the care of a family and sometimes cares of business, is authorized when, in his judgment fairly exercised, it is necessary for his own health or to care for the health of his family, or to look after important business matters, to temporarily absent himself from his post of duty, and by exchange, or by calling on the in-

cumbent of an adjoining or adjacent district, provide the means for the continued holding of the court, and that no litigant in such case has a right to retire such exchanging judge from the bench. This case is wholy unlike that of Oates v. State, 56 Texas Crim. Rep., 571, cited by appellant. In that case we held that the Governor has no authority to appoint a district judge to hold court, and that where the authority of such person attempting to act as judge was challenged that the conviction would be set aside.

2. A more serious question, however, arises in respect to the action of the court in overruling appellant's first application for a continuance. This continuance was sought on account of the absence of John King, who was alleged to reside in Clay County, and George Taylor, who was alleged to reside in or near Arlington, in Tarrant County, or near Fort Worth, in the same county. We think there is no merit at all, so far as the application rests on the absent testimony of John King. The testimony showed, practically without controversy, that no such person as King had lived in the section where the parties resided for many years and so conclusively established this fact that it is not a matter of serious dispute. The matter in respect to the absence of George Taylor is somewhat different. The application for continuance states that appellant expected to prove by said witness Taylor that: "On or about the 29th day of November, 1909, while the defendant was in conversation with J. A. Pollan near Price's Cross Roads, in Ellis County, Texas, the witness Geo. Taylor was present and heard the defendant purchase from the prosecuting witness J. A. Pollan one certain brown heifer about one and one-half years, branded with ...... on the hip, the same being the animal with which he is now charged with theft, and that he saw the defendant Geo. R. Johnson write a check and hand it to the said J. A. Pollan in payment for said animal." In the application for continuance it is averred that in this cause request was made to the clerk for subpoenas, as shown by his application attached to his application for continuance, which is marked exhibit A. An inspection of this application for subpoenas for witnesses does not show that the witness Taylor is among them. The subpoena alleged to have been issued for Taylor had been returned and was not before the court or the subject of inspection. In the absence of any reference to this application for witnesses it might be assumed that the subpoena had duly issued as stated, but where in the application referred to, as evidence that the subpoena had been issued, the name of the witness does not appear, we do not think the court would be concluded by a mere allegation that a subpoena had been issued where the record negatived the fact that same had been applied for. Again, it may be doubtful, under the facts, whether such a witness lived in that section or was in that immediate section at the time alleged. Practically all the witnesses for the State say that there had been a man named George Taylor in that country but that he had moved away some years before the date of the alleged theft. A witness named Stew-

art speaks of seeing Taylor some time in the fall. He is not at all definite when he saw him, but finally thinks it may have been in October. Appellant in his testimony says that Taylor rode by while the transaction or the purchase was going on. He says that Taylor had left the country something like two or three years ago, and that he understood him to say he had moved to Arlington, but would not be positive about that. It is wholly unlikely that Taylor would have testified to the matters, at least in any detail, which it is stated in the application he would have testified to. Touching this matter appellant says: "I know a fellow named George Taylor; he passed by there at the time I was writing this check. I just spoke, 'Howdy, George,' and he rode on. We were standing there talking; I was standing with my foot on the wheel when he went by. I was talking to Pollan and trying to write the check. He did not stop with me." Mrs. Johnson gives the folowing account of Taylor's presence at the time the trade was made: "There was a gentleman passed along there while they were having that conversation—George Taylor passed along there; I knew Mr. George Taylor's face. I do not know where he lived; he had lived down in that community before that time; he had lived close to Tellico; it was about four miles from Price's Cross Roads to Tellico. George Taylor was coming from Ennis and going towards Tellico; he was traveling horseback; he did not stop and talk with us; he merely passed along there. I could not tell you where Mr. Taylor was at the time Mr. Johnson was writing this check." A careful reading of this entire record has convinced us that it may well be doubted whether Taylor was in that country at the time of the alleged occurrence of these events, and that it is fairly certain that if he was in the country that it is wholly unlikely that his testimony would have gone further than to show his mere presence when appellant and his wife met Pollan. In view of the entire record we are not prepared to say that there was any abuse of the discretion of the trial court in refusing this application for continuance. Of course, if it were clear that the application were insufficient the action of the court could be sustained on that ground without the consideration of the question as to how far we would defer to the action of the trial court, and as to whether there had been an abuse of the discretion which the law commits to him. It is in doubtful cases, of course, that his discretion arises, and before we would be authorized to reverse a judgment of conviction in respect to any matter committed to the discretion of the trial court, it should be fairly clear that this discretion had been abused. In view of all the facts and in view of the showing made by the district attorney as to the testimony given by appellant's son in the examining trial, it seems to us that under the circumstances it would be unwarranted on our part to substitute our discretion in a matter of this sort for that of a trial judge on the ground and more conversant with the facts than we can possibly be.

3. Among other grounds of the motion for a new trial urged by appellant was the newly-discovered testimony of F. M. Power and Lon Morris, who reside in Archer County. By these witnesses it was expected to be shown that at the request of the district attorney trying the case they had examined the check mentioned above with the naked eye and with the same glass that the jury examined said check with while they were deliberating on the verdict in the case, and after said examination that it was their opinion, based on experience and the examination, that the check was in the same condition when paid as it was when they examined it, in so far as the name J. A. Pollan, written thereon, was written on the face of the check before the stamp of the Ennis National Bank was placed on said check, marking the same paid. This ground of the motion is met by the answer of the district attorney to the effect that these witnesses were present under subpoena in the courtroom on the trial and could have been used by appellant if he had so desired; that they were called to the courthouse at the instance of the State's counsel, and that they were called on to examine the check offered in evidence; that each of them told the district attorney that they could not give an expert opinion upon the writing of said check; that such opinion as they could give would not shed any light upon the question as to whether said check had been tampered with or not; that for this reason they were not put upon the stand, but on the contrary, with the consent of the defendant and his counsel, given in open court, submitted the check to the jury to be examined by them with a magnifying-glass, and they were allowed with the consent of each party to take said check with them to the jury room and examine it at their pleasure. It was also alleged that the testimony of one Phelps Terry, cashier of a bank at Ennis, was newly discovered, and was important to show the time of the payment of the check in question, the genuineness of appellant's signature and the custom of the bank in respect to paying checks payable to bearer, and other facts of similar character. To our minds the date of the payment of this check and matters of that sort is not important. That the check was signed by appellant seems not to have been doubted; that it was paid on the 31st day of December, 1909, through the regular channel, seems to have been unquestioned. The inquiry was, was the check given to the owner of the cattle? The testimony of all the State's witnesses strongly negative this fact. In the first place, it was shown that before the alleged purchase by appellant he had been offered $20 for the animal and had declined to sell it. In the next place, it was shown by this owner as well as his brother and Castles that appellant in substance denied having taken the animal to Archer County, but on the contrary stated that he had cut her out of the herd and made no claim of ownership or purchase. In the next place, the statement of himself and wife, with such circumstantial detail that the purchase had been made and paid for in cash, was strikingly at

variance with their later claim that she had been paid for with a check. Again, attached to the district attorney's contest motion is part of the sworn testimony of George R. Johnson, Jr., son of appellant and about seventeen years of age, and one of the persons who got up these cattle and helped drive them to Ennis, to the effect in substance that the animal in question, which was identified by description and brand, had got into the pasture in Ellis County, and that he cut her out of the bunch several times while going to Ennis; and further, that this heifer was the same one brought in the car from Ellis County. He did not know whose heifer she was, but says, "I knew she was not ours." He further states: "I never notified any one that we had a stray heifer in our pasture."

4. We can not accede to the suggestion made by the learned counsel that the evidence is insufficient to sustain the conviction. On the contrary, it seems to us there is ample evidence, if believed, to sustain same. Of course, it may be that an injustice has been done appellant. The jury, however, who have heard the evidence, and the learned trial court who had the witnesses before him, have, on full investigation of all the facts, found adversely to him. We ought not to interfere unless it was clear that there was some abuse of discretion committed by the trial court.

Finding no error in the record, it is ordered that the judgment of conviction be and the same is hereby in all things affirmed.

<em>Affirmed.</em>

McCord, Judge, absent.

ON REHEARING.

February 8, 1911.

PRENDERGAST, Judge.—The appellant's attorneys have filed a motion for rehearing herein setting up nothing new, in effect, from what was considered and fully passed upon by this court in the original opinion herein. In addition to an earnest and able oral argument and presentation of the motion for rehearing, he has filed a written brief and argument insisting earnestly that the court reverse and remand this case.

To his motion for rehearing he has attached some original papers which we can not consider. They do not go to the question of the jurisdiction of this court; neither do they come within the spirit or letter of what was said by this court as to such papers in the case of Speer v. State, 26 Texas Crim. App., 173, 9 S. W. Rep., 358.

We have carefully read this whole record, and have, in addition thereto, re-read and considered such portions of it as bear upon the action of the court, and the previous opinion herein, on the question of the overruling of appellant's motion for a first continuance. We have reached the conclusion that we would not be justified in reversing and remanding this cause. We can see no necessity for a further discussion

on the subject, as the original opinion herein rendered fully disposes of the whole matter to our satisfaction.    The motion for rehearing is, therefore, overruled.

*Overruled.*