DENNIS RANDEL V. STATE.

No. 24230. February 2, 1949.
Rehearing Denied April 27, 1949.

*Emil Rassman,* and *William L. Kerr,* Whitaker; *Turpin, Kerr, Smith & Brooks,* Midland, for appellant, (on appeal only).

*Ernest S. Goens,* State's Attorney, Austin, for the State.

GRAVES, Judge.

Appellant was convicted of the killing of his twin brother,

Dallas Randel, and by the jury given a life term in the peniten-
tiary, and he appeals.

Appellant contends that the facts herein shown fail to show
any evidence of malice upon his part and suggests a reversal
hereof on account of such failure. The facts are controverted,
the state showing a brutal killing in that it proved by an eye
witness that these two brothers were present in the Roadside
Inn on the night of the homicide and seemed to have had some
kind of a disagreement over the playing of a juke box; that they
finally began to push one another around; that appellant said
to the deceased, "You leave me alone, and leave my business
alone, and, if you do it again, I will fill you full of lead." The
deceased then said to appellant, "Don't talk that way. I haven't
bothered you. I am your brother." After some further conversa-
tion, they continued to push each other, and finally appellant
said, "If you don't leave me alone, I will fill you full of lead, and,
if you don't think I am kidding, I will do it." The deceased then
backed away and placed the palm of his hand over his heart
and appellant "drew his gun and fired as he went down with his
gun; he pulled the gun up and shot and hit the ceiling," and
deceased backed away, got out to the front door and said, "If
you are going to shoot me, go ahead. I believe you are scared."
Appellant then shot the deceased who had his hands up like
this (indicating). The deceased was shot in the head and died
immediately. No weapons were found upon his body. Between
the first and second shots, the deceased said, "Go ahead and shoot
me. I don't believe you will do it. Go ahead." The deceased was
drunk and staggering while in this inn and during the events
above described.

Appellant and his witnesses present an entirely different
picture from the state's testimony above set forth. Deceased was
shown to have been an erring man, of high temper, and having
the reputation of carrying a gun at all times and using the same
on many occasions. He often allowed his anger to get the best
of his judgment, and engaged in inexcusable acts of violence to-
wards many people, chief among them being the appellant. He
was unmarried and of no particular trade or avocation. He had
not only threatened appellant to his face but also to others, and
these threats were communicated to appellant. The deceased
had severely cut this brother some years past. He had been
indicted, convicted and served terms in the penitentiary for
divers offenses and when killed, he was suffering from a broken
jaw received while in jail. He had caused his brother, through
fear of him, to give to the deceased sums of money many times.

Many of his evil deeds were proven before the jury and known to appellant. At the time the deceased met his death, appellant claimed that deceased had his hand in under his overcoat where he carried a gun. Appellant shot once as a warning shot and the bullet went into the ceiling, but deceased continued advancing in this attitude of menace, and appellant shot him in the head in order to save his own life. To some extent appellant's version of this homicide was controverted by other defense witnesses.

It can thus be seen that there were two conflicting theories, both substantiated by proof, and the truth thereof became a matter for the jury. They evidently accepted the testimony of the state's witnesses as true, and we have no right to substitute our judgment for theirs on a question of fact.

Again, we think the state's testimony contains sufficient statements from which the jury could infer malice which could have been formed in but a moment of time, or could have arisen from the long continued mistreatments of appellant by his deceased brother, as testified to by appellant and his witnesses.

This cause went to trial before Judge Cecil C. Collings, district judge of that district, on June 7, 1948, in the city of Odessa. The trial continued through that day. A jury was selected and 26 witnesses had testified therein. On June 8, 1948, at approximately 5:00 o'clock in the afternoon, Judge Alton B. Chapman, the regular district judge of the 110 Judicial District, came into the court room, and after a conference between these two district judges, Judge Collings informed appellant and his attorneys that he desired to retire from the case in order to meet an important political engagement in another county, and that if agreeable to appellant and his attorneys, he would turn the trial of the case over to Judge Chapman and proceed to fill this political engagement; but that if there was any objection thereto, he would forego this engagement, whereupon, after a consultation of the attorneys with their client (appellant), such exchange of judges was agreed to, and such was stated to the court; but one of appellant's attorneys stated that he would take an exception to such an exchange. Judge Collings then stated that unless they all agreed to such proceedings, he would continue to preside at this trial. A further consultation was had by the attorneys and appellant, and they then in open court announced that such exchange was agreeable to them and to the appellant, whereupon Judge Collings asked appellant the following question: "Is this exchange of benches and my relinquishing the trial of this case to Judge Chapman entirely satisfactory to you, Mr.

Randel?" To which inquiry had in open court appellant advised the court that it was entirely satisfactory with him, whereupon the jury being in retirement at such time, they were returned into court and Judge Collings made the following statement:

"Judge Alton B. Chapman of the 110th Judicial District from Floyada is here and has consented to come down and take my place the balance of the week, and at this time I am turning the case over to him and you will enjoy working for him."

No objections to such action nor exceptions thereto were ever made and none made to Judge Chapman proceeding with the trial. He heard the testimony of three more witnesses, prepared the charges to which no exceptions or objections appear to have been urged, and received the verdict of the jury.

There being no objection nor exception to this exchange of judges but an agreement thereto was had, not only by the attorneys but also by appellant himself, we are then faced with the sole proposition as to whether such action amounts to a fundamental error when raised for the first time in this appellate court. In other words, has a person on trial before the court the right or ability to waive the presence of one judge by agreeing to the substitution of another judge of equal dignity and power to the one excused? That there was such a waiver seems plain to us and is not denied by appellant, although some objection is now raised to the fact that such proceedings relative to the waiver were not taken down by the court reporter nor to be found in the record save as a qualification to said bill as found in the transcript. We set out such qualification to said bill as follows:

" 'Judge Alton B. Chapman of the 110 Judicial District from Floydada is here and has consented to come down and take my place the balance of the week and at this time I am turning the case over to him and you will enjoy working for him.' That after such statement was made Judge Chapman assumed the duties of trial court and Judge Collings was sworn as a witness for the defendant and testified as such and then absented himself for the remainder of the trial of said cause.

"That at no time was there any objection made by either counsel for the Defendant or by the Defendant himself as to the exchange of judges as above set out. That at all times during the conversation and conferences held between the court and the attorneys representing both the State and the Defendant, the said Defendant, Dennis Randel, was seated in the

court room and some ten feet distance from the desk of the court and that such conversation and conferences were carried on in a conversational tone, and that his said attorneys, Frank Sparks, and O. E. Gerron, from time to time conferred with the said Dennis Randel as to such proceedings. That said conferences and conversations were had in open court in the presence of the Defendant and that the said Defendant consented to and agreed, by and through his said attorneys, and in person and by the means aforesaid to such exchange of judges, that is, the Honorable Cecil C. Collings to retire and the Honorable Alton B. Chapman to assume the trial of said cause.

"That no objections were ever made to said exchange although the said Judge Alton B. Chapman heard the testimony of some three or four witnesses, and said matter was not raised in motion for new trial.

"The official court reporter, in all the above proceedings, was at his regularly assigned desk some 12 feet removed from the court's bench and none of the above appears in his records of the trial, and other than, as above set out, the matters in this qualification concerning exchange of benches does not otherwise appear of record, and all such proceedings was oral."

The right to a trial by jury arose in the common law and was well known at the time of the adoption of our Federal Constitution. It has been held in practically all our different state courts that such a trial contemplated that the jury must be composed of twelve men indifferent between the prisoner and the sovereign; from the vicinage where the offense was supposed to have been committed; must be unanimous and uninfluenced by aught save the testimony, but at common law, the assessment of the punishment was not a portion of the duty of the jury. See 42 Words & Phrases, Permanent Edition, p. 513, et seq., "Trial by Jury," it being there further shown that such jury should be under the direction of a judge empowered to instruct and advise them. See Freeman v. United States, 227 Fed. 732, and many cases cited.

Undoubtedly, we find present herein a judge at all times present, the change of judges being the crucial point in this bill. Again, the question of a trial by jury is brought herein by analogy, it being contended that a trial by jury means not only the twelve jurors but also the judge; that during the trial a further juror could not be substituted for a juror withdrawn from the original twelve, and taking the place of the juror originally called, and such judge could not withdraw himself dur-

ing the trial and allow the substitution of another judge of equal dignity to finish such trial.

We are not impressed with the reasoning of such position.

It is noted that each state has a system of its own relative to the constituent members of a jury, all based primarily upon the common law, making the number twelve and allowing no substitution of any number, each state with its own allowance of a diversion therefrom as applied to courts of divergent dignity, but nowhere therein do we find any analogous case to the present one in Texas.

If the federal rule demands the continuous presence of the one and same judge, as is shown in Freeman v. United States, supra, such reasoning is based materially upon the accepted doctrine of federal procedure. The judge hears the evidence and upon final summation he has the power to comment upon the testimony of the witnesses and give his reasons relative to the truth or falsity thereof, as well as it is his duty to affix the punishment after a verdict of guilt. It is clear that a judge who did not hear the testimony of all the witnesses could not be in a position to decide upon a fair amount of punishment, nor to comment on the testimony of witnesses that he did not hear.

In our state, we have seen fit to allow a waiver of the trial by a jury in a misdemeanor case. A judgment may be rendered in the accused's absence. (Art. 782, C. C. P.) Also, he may waive a jury in the justice of the peace court (Art. 891, C. C. P.) as well as in the county court (Art. 578, C. C. P.). A jury therein consists of six men. In certain district courts having jurisdiction over misdemeanors, under certain circumstances, nine men can render a verdict. (Art. 681, C. C. P.) It should be evident from the above that the common-law rule relative to the jury consisting of twelve men has been enlarged upon, and may consist of none at all by waiver, or of six, nine or twelve, according to the statutes relative thereto.

In our civil courts, the following procedure was had in Lancaster v. Bush, 267 S. W. 339:

"Propositions 17 to 20, inclusive, charge error in exchange of judges during the progress of the trial. The bill of exceptions shows the facts to be: Judge Price, of the Forty-first district, called the case, passed upon the pleadings, impaneled the jury, and heard the pleadings read, and then announced that he was

physically unable to attend the trial of the cause, and called the judge of the Sixty-Fifth district to take charge. None of the parties made any objections. The judge of the Sixty-Fifth district presided until the evidence was introduced and all parties rested, prepared the charge, passed on the exceptions thereto and the special charges, and heard the charge to the jury, whereupon the judge of the Forty-First district resumed charge of the case. Whereupon objection was made to trying the case by piecemeal, and for the further reason that neither of the judges heard all of the proceedings and therefore not competent to render judgment.

"The record discloses that both judges passed upon the motion for new trial and both signed the judgment. Under such facts, there was no error, for the Constitution and statutes of Texas provide for exchange of judges whenever they deem it expedient. Johnson v. State, 61 Tex. Cr. R. 104, 134 S. W. 225; Marx v. Weir, 61 Tex. Civ. App. 520, 130 S. W. 621; York v. State, 91 Ark. 582, 121 S. W. 1070, 18 Ann. Cas. 344; Cobb & Gregory v. Parker, (Tex. Com. App.) 242 S. W. 1018."

In this cause the supreme court dismissed an application for a writ of error.

Art. 1916, Vernon's R. C. S., provides as follows:

"A judge of the district court may hold court for or with any other district judge; and the judges of such courts may exchange districts whenever they deem it expedient."

That the above-quoted statute applies in criminal matters is held in Hart v. State, 61 Tex. Cr. R. 509, 134 S. W. 1178. See also Johnson v. State, 61 Tex. Cr. R. 104, 134 S. W. 225; Eucaline Medicine Co. v. Standard Inv. Co., (Civ. App.) 25 S. W. (2d) 259, and cases cited on page 263.

Under the annotations in Penn. v. Thompson, 114 A. L. R. 432, it is stated that "under certain circumstances (such as death of the judge starting the trial, his illness, or perhaps illness in his family), and at certain stages of the trial another judge may be substituted for him, at least where no prejudice or inconvenience resulted to defendant or he consented to the change." We find this text supported by decisions in many of the states of the union; however, the contrary doctrine follows the Freeman case, supra. The Thompson case, supra, states "that the substitution of judges during a case should be carefully guarded and never permitted except under most extraordinary

circumstances, and only then when no prejudice can result to the parties." It seems that the prevailing doctrine is that above stated, and does not take into consideration the proposition relative to a waiver and the doctrine of an estoppel arising therefrom. See 30 Amer. Jur., pp. 800-801, under the title of "Judges". We quote from idem, page 811, section 108, the following:

"Ordinarily, the objection must be made at or before the trial. If not made in the trial court, it will be regarded as waived, and cannot be made for the first time on appeal. Thus, the parties may expressly agree that a special judge need not be sworn, in which case the omission of the oath cannot afterward be made a ground of objection."

We fail to see where an analogy can be successfully drawn between the changing of judges and the common-law rule demanding the presence of twelve jurors.

We express the opinion that an accused can waive the matter complained about herein relative to the changes of judges. Article 11, C. C. P., 1925, provides that "the defendant in a criminal prosecution for any offense may waive any right secured to him by law, except the right of trial by jury in a felony case." (Old Code 26). In the year 1931, the 42nd Legislature, at page 65 of the acts thereof, Regular Session, amended this article to include the phrase, "when he enters a plea of not guilty." In the same act, Art. 12, C. C. P., was amended to read in part as follows and must be taken in conjunction with the above Article 11:

"No person can be convicted of a felony except upon the verdict of a Jury duly rendered and recorded, unless in felony cases less than capital, the defendant upon entering a plea of guilty has in open Court in person and with the approval and consent of the Court and the State's Attorney, as provided in Section 1 of this Act, (Article 10a of Code of Criminal Procedure of the State of Texas), waived his right of a trial by Jury."

Article 10a, C. C. P., above referred to reads in part as follows:

"The defendant in a Criminal prosecution for any offense classified as a felony less than a capital offense, shall have the right, upon entering a plea of guilty, to waive the right of a trial by a Jury, conditioned, however, that such waiver must be made in person by the defendant in open Court with the consent and approval of the Court and the duly elected and acting

Attorney representing the State."

It should be evident that under our statutes one can waive the right of a trial by jury, as well as some other matters that he might be confronted with.

The quoted qualification of Bill No. 1 shows that appellant's attorneys, in open court, waived the change of judges and agreed thereto; that appellant himself also waived his right relative to a retention of Judge Collings and no objection was made thereto nor exception taken therein; that he agreed to the substitution of Judge Chapman.

It is urged that the last judge presiding heard none of the testimony of the first 26 witnesses and therefore would be unable to prepare his charge to the jury on the law as applied to the facts. The state answers thereto that no objections nor exceptions were leveled at such charge; that appellant was evidently satisfied therewith and therefore suffered no injury.

We are cited to the case of Summerlin v. State, 69 Tex. Cr. R. 275, 153 S. W. 890, as a case fairly in point. In that case, while the trial was practically finished, the judge trying the case received word that his child was ill and his condition growing worse. Mr. Allen, main counsel for the accused, was temporarily out of the court room, and Judge Woodruff, one of the accused's attorneys, without obtaining the consent of Mr. Allen or the appellant, agreed with the district attorney that Mr. McRae, a member of the bar, should sit as judge for the remainder of the case and allow the regular judge to go to his home in a neighboring county. This agreement was then reduced to writing. Neither appellant nor Mr. Allen signed such agreement, nor did they agree to such. Four more witnesses were then used and McRae instructed the jury, and they went out and returned a verdict of guilt. There was no waiver made by Allen nor appellant and none claimed. That case was reversed on three grounds: namely, (1) That the selection of McRae as special judge was illegal (See Art. 553, C. C. P.); (2) that appellant did not agree to such substitution; and (3) that McRae did not take the oath of office as special judge, (Art. 555, C. C. P.). See Blackburn v. State, 149 Tex. Cr. R. 192, 192 S. W. (2d) 888. None of these conditions appear in the present record. While not to be commended, we see no reason to hold that such proceedings were violative of appellant's rights herein.

This ruling disposes of Bills Nos. 1, 2, 3, and 7.

Bill No. 4 complains because one of appellant's witnesses who testified to the bad reputation of the deceased in certain lines was asked by the state, without objection thereto, if he had not been a defense witness in the case of the State v. Jack Henry, to which the witness answered that he had been such witness. It is noted that no objection was made nor exception taken to such proceedings, and we have nothing herein to rule upon.

Bill No. 5 is identical with No. 4 save that such question was asked the witness, Judd Davidson, and same was not objected to nor excepted to. The bill is overruled.

Bill No. 6 relates to a chart of some kind prepared by some person relative to the times the deceased, Dallas Randel, has been arrested, suspected or charged with felonies and misdemeanors, this chart being in writing and seemingly compiled by the Department of Public Safety of the State of Texas and sent by it to a deputy sheriff of Ector County and offered by appellant. The state objected to its introduction before the jury and properly so, we think. Numerous violent acts of deceased were placed in evidence before the jury with no objection thereto, and many of them were admissible but this chart showing many misdeeds, including murder, bond violations, vagrancy, drunkenness, fighting, and held for investigation was but a hearsay writing, dated at Austin, Texas, and was not compiled by the witness, and was not admissible as such, and the trial court properly excluded the same.

Bill No. 8 complains because after the witness, Woody Butler, had testified to certain threats made by the deceased against appellant and also as to the reputation of the deceased, it was developed that at the time the witness had known the appellant, he was the operator of a "beer tavern", "a honky-tonk." The bill contains the following questions and answers:

"Q. During the time you have known this defendant, what kind of business has he been engaged in? A. Been engaged in— he had the Spanish Garden.

"Q. Is that a beer place? A. What you call a 'honky-tonk'.

"Q. What is the next one? A. Spanish Garden and—

"Q. You told us he operated the Spanish Gardens, which is a honky-tonk. What is the next one? A. Danceland.

"Q. What is it? A. Dance hall.

"Q. They sell beer? A. Yes.

"Q. Is it a honky-tonk? A. Yes."

It seems that Webster's New International Dictionary, (2nd Ed.) defines a "honky-tonk" as a low drinking resort, and according to the testimony, this place was a drinking resort. Many different resorts were shown by the record to have been run or owned by appellant at one time or another. We do not think such showing could lead the jury astray from the fact that those places were those where beer was sold and there imbibed by the customers. As to whether they were "honky-tonks" would be but an immaterial matter.

While this verdict is a severe one, it is within the limit fixed by law for murder, and it is also a matter for the conscience of the jury only under our laws.

Finding no error shown herein, the judgment is accordingly affirmed.

### ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that we erred in concluding that the substitution of one judge for another during the trial of his case did not operate to deprive him of the right of trial by jury as guaranteed by the Constitution and laws of this State.

Appellant challenges the correctness of our conclusion that the record affirmatively reflects he agreed to the exchange or substitution of the judge.

The record has been again examined upon this question, and we remain convinced of the correctness of our original finding.

Whether appellant did or did not agree to the exchange by the judges is immaterial, for if the substitution of one judge for another during the trial operated to deny to him the right of trial by a jury he could not waive that right. If the substitution was not an assential element of the right of trial by jury, appellant cannot be heard to complain because of the absence of any objection thereto during the trial of the case.

The question before us is whether "trial by jury" requires that the judge presiding at the beginning of a trial preside throughout the trial.

There can be no doubt but that "trial by jury" as known to the common law is here controlling except where changed, modified, or abrogated by the statute law of this state.

At common law, trial by jury comprises three essential elements. These are: (a) that the jury be comprised of twelve men; (b) that the trial should be in the presence and under the superintendence of a judge having power to instruct the jury as to the law and advise them with reference to the facts; and (c) that the verdict should be unanimous. Patton v. United States, 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854.

We are concerned, here, only with the second of these elements—that is, that the trial be in the presence and under the supervision of a judge.

Appellant contends that this means the same judge—that is, the trial must be in the presence and under the supervision of the same individual sitting as the judge throughout the trial, and that the substitution of that individual for another has the effect of denying a trial by jury.

Appellant has direct authority supporting his contention in the case of Freeman v. United States, 227 Fed. R. 732, by the Circuit Court of Appeals for the Second District, in 1915. The conclusion there expressed was:

". . . that in a criminal case trial by jury means trial by a tribunal consisting of at least one judge and twelve jurors, all of whom must remain identical from the beginning to the end. It is not possible for either the government or the accused, or for both, to consent to a substitution either of one judge for another judge, or of one juror for another juror. The continuous presence of the same judge and jury is equally essential throughout the whole of the trial."

The Freeman case was a conviction for a federal offense. The rules governing a trial in the federal courts therefore applied. The conclusion expressed was based upon the rules at common law. The holding requiring the continuous presence of the same judge throughout the trial was based upon the proposition that he occupied the same relation to the case, in so far as substitution was concerned, as did any member of the jury. A substitution of one juror for another not being allowed, the conclusion followed that neither could one judge be substituted for another.

Has the common law rule been abrogated, changed, or modified by the laws of this state? Our statutes require that the jury in a felony case be composed of twelve men (Art. 578, C. C. P.) and that the verdict must be unanimous (Art. 687, C. C. P.) So then, these two essentials of the common law definition of trial by jury have been expressly adopted by the statutes of this state. As to these, we are governed not by the rule at common law but by the statutes of this state.

As to the presence and supervision of a judge at the trial, we note that both at common law and under federal procedure the trial judge was not only the judge of the law but also had authority to advise the jury as to the facts.

According to our statutes (Art. 658, C. C. P.), the trial judge controls the law of the case but is expressly prohibited from "expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the Jury."

Thus one of the rights accorded to a judge at common law— that is, the right to advise the jury with reference to the facts— has been expressly denied by a statute of this State.

The right of a judge at common law to advise the jury with reference to the facts—that is, to comment upon the facts— was, no doubt, a compelling reason why the same judge was required to preside throughout the trial. Obviously, no such reason exists under the laws of this state.

Finally, then, is the exchange of benches by judges in this state controlled by the statute laws so as to abrogate the common law rule?

Art. 5, Sec. 11, of the Constitution of this state provides, among other things, as follows:

"And the District Judges may exchange districts, or hold courts for each other when they deem it expedient, and shall do so when required by law."

This constitutional provision was, in effect, enacted into statute, by Art. 1916, R. C. S., 1925, which reads as follows:

"May alternate, etc.—A judge of the district court may hold court for or with any other district judge; and the judges of

such courts may exchange districts whenever they deem it expedient."

Under the provision of the constitution, as well as the statute, it has been long the holding of this court that judges may agree to exchange benches or one judge sit for another. Johnson v. State, 61 Tex. Cr. R. 104, 134 S. W. 225; Hart v. State, 61 Tex. Cr. R. 509, 134 S. W. 1178; Petre v. State, 112 Tex. Cr. R. 459, 17 S. W. (2d) 42.

In addition to the constitutional and statutory provision above mentioned, the legislature has expressly provided for the holding of courts by one district judge for another. Administrative Judicial Act, Art. 200a, Vernon's Civil Statutes.

The expression, "when they deem it expedient," as contained in the constitution and in the statute above mentioned, confers upon district judges broad discretionary powers to exchange benches or hold court for each other. No limitation as to time, place, or occasion when the exchanges of benches might occur has been fixed. So if district judges deem it expedient to exchange benches during the trial of a case, that power has been conferred and their action in so doing becomes reviewable only to determine if an abuse of discretionary power has occurred.

From what has been said, it is apparent that the common law rule requiring that the same judge preside throughout the trial of a felony case has been expressly abrogated by the constitution and statutes of this state.

As applicable to the trial of felony cases in this state, then, the elements essential to constitute a "trial by jury" are (a) a jury of twelve men, (b) a judge qualified as and having the powers of a district judge presiding over the trial, and (c) a unanimous verdict.

Appellant's trial was in accordance with these essential elements. He was not, therefore, denied his constitutional right of trial by jury.

At appellant's insistence, the facts have been again reviewed. We are unable to reach the conclusion that the jury was without authority in law to reach the conclusion that it did.

Appellant's motion for rehearing is overruled.

Opinion approved by the Court.

BEAUCHAMP, Judge (Concurring).

I am concurring in the original opinion and in the opinion overruling the motion for rehearing, though I wish to expressly state that I cannot concur in all of the reasoning given.

The statutory authority providing for the holding of court by one district judge for another was enacted with no thought that it may be used as an expedient to meet political engagements, or anything else less than situations which are unavoidable and for the purpose of expediting the trial of cases. The provision should be strictly construed for the improvement of judicial procedure. I see no ground for utilizing it for the convenience of either the judge or the litigants. If the opinions in this case are to be so construed then I am unable to concur in such conclusions. I do think, however, that the party on trial has some responsibility to protect his rights as the trial proceeds. Whether or not he agreed to the exchange of judges by express word is immaterial. The matter was fully explained to him and to his attorney. If objection is to be made it should have been revealed at that time.