Robert MEDINA, Appellant,

v.

The STATE of Texas, State.

No. 2–87–021–CR.

Court of Appeals of Texas, Fort Worth.

Jan. 27, 1988.

Discretionary Review Refused April 6, 1988.

Barry G. Johnson, Fort Worth, for appellant.

Tim Curry, Criminal Dist. Atty., C. Chris Marshall, and David L. Richards, Asst. Dist. Attys., for State.

Before BURDOCK, HILL and LATTIMORE, JJ.

## OPINION

BURDOCK, Justice.

Appellant Robert Medina was convicted by a jury of murder. *See* TEX.PENAL CODE ANN. sec. 19.02 (Vernon 1974). He was sentenced to 65 years imprisonment in the Texas Department of Corrections. He now appeals his conviction in six points of error.

We affirm.

At about midnight on May 3rd, 1985, Tanya Schroeder, Jay Clemons and Kerry Buckley went to downtown Fort Worth. After visiting the Water Gardens, they proceeded to walk north on Commerce Street. As the three walked down Commerce, they passed David Overton, Robert Cantrell and the appellant. As the three passed the appellant's group, Tanya Schroeder heard one of them whistle and mumble something.

When Schroeder, Clemons and Buckley stopped at the crosswalk on Fifth Street, they noticed that they were being followed closely by the appellant, Cantrell and Overton. At this point, Overton said to Schroeder "You sure are a fine-looking chick." Overton engaged Schroeder in conversation, offering her a beer out of a cooler he was carrying. Schroeder politely declined, then turned and walked away. Appellant's group continued to follow them closely, sometimes at a distance of no more than a foot or two. Overton again offered them beer, and after receiving another negative response, offered them a "joint". Afterward, Schroeder, Clemons and Buckley continued walking, and appellant's group continued to follow.

Finally, Overton grabbed Schroeder's right arm and informed her that she'd have a better time spending the evening with him. Clemons intervened and asked Overton to leave Schroeder alone, at which point Overton became verbally abusive, making sexually suggestive remarks to Schroeder and calling Clemons and Buckley offensive names. After a few more words were exchanged, Overton struck Clemons with the cooler of beer and the two began to fight. Buckley began to run, but was caught by Cantrell, who began to beat him. During the fight, Schroeder heard Buckley yell to Clemons that the appellant had drawn a gun. Appellant then shot Clemons and a moment later shot Buckley. Appellant, Overton and Cantrell then ran from the scene north to an apartment complex, where they were later arrested. Both

Clemons and Buckley died as a result of the gunshot wounds inflicted by the appellant.

Appellant was tried for the murder of Jay Clemons in the 213th District Court, presided over by Judge Tom Cave. During the trial, Judge Cave was indicted by a federal grand jury for official misconduct and mail fraud. The indictment was handed down after the appellant had rested following the guilt/innocence phase of the trial.

Before the trial resumed, appellant filed a motion for a hearing regarding the qualifications of Judge Cave to continue presiding over the trial. At the hearing, Judge Don Leonard ruled that Judge Cave was legally authorized to continue presiding since he had not yet been suspended by the State Commission on Judicial Conduct. Appellant then motioned for a mistrial; the motion was overruled by Judge Leonard.

Judge Cave continued presiding over the trial during final argument and through a portion of the jury deliberation. Judge Cave then voluntarily suspended himself on November 17, 1986. At this point, Judge C.C. "Kit" Cooke assumed the bench and presided to the conclusion of the trial, which encompassed the remaining jury deliberation on guilt/innocence and the entire punishment phase.

In his first point of error, appellant contends that Judge Cave erred in not voluntarily resigning immediately at the time when he was indicted and that Judge Leonard erred in denying appellant's motion for mistrial which was predicated upon the indictment of Judge Cave. According to appellant, since a juror who had been indicted would be disqualified to sit in a trial, it would logically follow that a judge under felony indictment would be disqualified and therefore a mistrial should have been declared. We note that appellant has not specifically stated how the indictment of Judge Cave harmed appellant's defense, nor has he cited any authority to this court to support his contention that a mistrial should have been declared. However, we

agree with appellant that the facts before us present this court with a somewhat unusual set of circumstances.

The relevant question presented under this point of error is: At what point is a judge no longer allowed to preside over his court? There has been no allegation made by appellant that the Judge's impartiality may have been affected by the indictment against him, and thus no issue arises concerning a need for recusal. Instead, the issue before the court deals with the legal right of Judge Cave to continue presiding rather than the propriety of his doing so.

■ It is a generally recognized rule that, although a judge may be suspended from office pending the outcome of disciplinary proceedings against him, the suspension is proper only if made pursuant to constitutional or legislative authority. *See* 48A C.J.S. *Judges* Sec. 41 (1981). In short, once a judge has been duly appointed or elected and has taken his oath, he remains the qualified judge of that court until he is suspended, legally disqualified or until he voluntarily resigns. Therefore, we must determine if Judge Cave was somehow legally disqualified from continuing to preside over the appellant's trial.

Texas law provides several methods by which a judge may be suspended from office. He may be impeached by the Senate and thus removed from office. *See* TEX. CONST. art. XV sec. 2. He may also be removed by the Supreme Court upon petition of ten attorneys. TEX. CONST. art. XV, sec. 6. A judge may further be removed from the bench by a two-thirds vote of the Legislature after address from the Governor. TEX. CONST. art. XV, sec. 8. Finally, a judge may be removed from the bench by the State Judicial Conduct Commission pursuant to article V of the Texas Constitution, which provides in relevant part:

Any person holding an office specified in this subsection *may* be suspended from office with or without pay by the Commission immediately on being indicted by a State or Federal grand jury for a felony offense or charged with a misdemeanor involving official misconduct.

*See* TEX. CONST. art. V, sec. 1-a(6). (Emphasis added.)

■ The article reproduced above expressly provides that a judge *may* be suspended by the commission if he has been indicted by a State or Federal Grand Jury. We note however, that the article is permissive and not mandatory. We further note from the record that the Commission at no time suspended Judge Cave prior to the day he voluntarily resigned from the bench, even though the Commission was fully empowered to do so.

Absent a formal suspension by the commission pursuant to article V, and short of removal by any of the other means as set out above, we find no authority for requiring Judge Cave to step down from his position. *See generally Power of Court to Remove or Suspend Judges,* Annot. 53 A.L.R.3rd 882, 894 (1973). In fact, unless legally disqualified, a judge has a duty to proceed with a trial in his court regardless of the fact that doing so may cause him embarrassment for some reason. *See Aldridge v. State,* 170 Tex.Cr.R. 502, 342 S.W.2d 104, 107 (1960).

We therefore hold that Judge Cave was not required to step down from the bench solely because of the issuance of the indictment. Consequently, Judge Leonard did not err in ruling that Judge Cave was qualified to continue presiding over the appellant's trial. Absent any showing that he was harmed by Judge Cave's indictment, appellant's first point of error is overruled.

■ In his second point of error the appellant asserts that the trial judge erred in refusing to admit testimony of a witness called by the appellant. During the guilt/innocence phase of the trial, appellant called David Overton to the stand and attempted to question him about the charges he had faced which arose from the shooting of Clemons and Buckley. The judge would not allow the appellant to question Overton

in the presence of the jury about his guilty plea to charges of aggravated assault. Appellant's counsel duly made a bill of exceptions in which he propounded questions concerning Overton's plea bargain.

In ruling that it would not admit the line of testimony referred to above, the trial judge stated:

> In regard to the question before the Court, it is the opinion of the Court that the testimony of the witnesses, Robert Cantrell and David Overton, if sponsored by the Defense for the purpose of elucidating, would not be admissible. Had the State called either witness, of course, obviously the Defense would have had the opportunity to go fully into the bias or prejudice.

> The relatively new rule of evidence which allows witnesses to be called as quote, adverse witnesses, quote, specifically excludes the use of the rule for impeachment purposes only, and it would appear to the court that that's about the only thing these people would testify to.

> With regard to the matter before the court that being the case, the Court will exclude any evidence of the disposition of the cases against either Cantrell or Overton, and certainly as to any penalty, if any assessed.

Appellant asserts that the trial court was in error in that under the new Texas Rules of Criminal Evidence, any party may impeach any witness. *See* TEX.R.CRIM. EVID. 607. According to appellant, Overton had given statements implicating the appellant as the trigger-man in the shooting while in the process of plea bargaining. Thus, appellant asserts that Overton was a witness against him, even though Overton was not called by the State.

We find appellant's assertion unpersuasive. We are unaware of any decisions from the courts of this state which limit the ability of a party to call a witness for the sole purpose of impeachment. Rule 607 does not have an express provision prohibiting a party from calling a witness for impeachment purposes. However, we find that Overton's testimony concerning his plea bargain was inadmissible on other grounds.

Under rule 402, evidence of any type is admissible only if it is relevant. *See* TEX. R.CRIM.EVID. 402. The appellant's desire to question Overton was an apparent attempt to inform the jury of Overton's relatively minor charge and light sentence, so that the jury might take it into account in assessing the appellant's punishment. However, Overton's punishment for his involvement in the shootings was not relevant at the guilt/innocence phase of the appellant's trial, as it did not have any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. *See* TEX. R.CRIM.EVID. 401. Therefore, the trial judge did not err in withholding Overton's testimony from the jury, even though he did so for the incorrect reason.

Appellant cites us to the cases of *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), *Parker v. State*, 657 S.W.2d 137 (Tex.Crim.App.1983), and *Spain v. State*, 585 S.W.2d 705 (Tex.Crim. App.1979), for the general proposition that reversible error exists where the trial court denies the defendant his right to question a witness called by the State. We agree that these holdings are correct but find them inapplicable to the appellant's case. All three cases deal with the trial court's denial of the defendant's right to *cross-examine* a witness called by the State. Here, David Overton was called by the appellant. The trial court merely refused to allow the appellant to question a witness about irrelevant matters. Appellant's second point of error is overruled.

Appellant's third and fourth points of error concern the identification procedure employed by the Fort Worth Police Department during its investigation of the shooting. In the interest of clarity we will address the appellant's fourth point of error before addressing the third point of error. Before doing so however, a short rendition

of the facts surrounding the identification procedure will aid in the disposition of these issues.

Shortly after the shooting, Tanya Schroeder was taken to the Fort Worth Police Station, where she was shown several photographic line-ups. The photographs of Overton and the appellant were taken shortly after they arrived at the jail. Schroeder was able to pick a photo of Overton out of a line-up with relative ease. However, after viewing three photo spreads, Schroeder was unable to pick out a picture of appellant with any certainty. Schroeder then glanced to her side and saw a picture of the appellant which was sitting atop a stack of photographs which was located on a table near her. The photograph showed not only the appellant's face but also a portion of his clothing.[1] Schroeder immediately informed the officer that she recognized the picture as one of the appellant. The officers quickly took the photograph out of Schroeder's presence, in a manner which made her believe she was not intended to see it.

At trial, the police officer in charge of the investigation testified that any statements made by a person viewing a photo line-up are noted on the back of the spread sheet. However, no notation of Schroeder's "inadvertent" identification is found on the spread sheet. The police officer further testified that he did not recall that Schroeder had made such an identification of the appellant.

During the trial, the State did not question Schroeder about the identification procedure. Schroeder did make a positive in-court identification of the appellant as the person who shot both Clemons and Buckley. The appellant moved for a mistrial upon learning of the improper identification while Schroeder was undergoing cross-examination.

In his fourth point of error, the appellant contends that his due process rights were violated when the Ft. Worth Police Department allowed Schroeder to see the photograph of appellant which had his clothing visible. Appellant contends that the photograph as shown constituted an impermissibly suggestive identification procedure.

■■■ An appellant who contends on appeal that a trial court erred in allowing an in-court identification of him by a witness must show by clear and convincing evidence that the witness' in-court identification of the appellant as the alleged wrongdoer was tainted by improper pretrial identification procedures. See Jackson v. State, 628 S.W.2d 446, 448 (Tex.Crim.App. 1982). Unless this burden is sustained, the witness' in-court identification is always admissible. Id. A conviction based upon eyewitness identification at trial following a pretrial identification procedure will be set aside only if the pretrial identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Garcia v. State, 626 S.W.2d 46, 54, (Tex.Crim.App. 1981). This determination must be made from a totality of the surrounding circumstances. Simmons, 88 U.S. at 970.

■■■ We hold that Schroeder's identification of the appellant during an improper photographic line-up did not taint her in-court identification of the appellant. We first note that the appellant himself admitted shooting both Jay Clemons and Kerry Buckley. A reading of the testimony by appellant reveals that he apparently admitted to the shootings in an attempt to raise the issue of self-defense. Although appellant failed to convince the jury that he was reacting to a perceived threat in the same manner an average person would, he did accomplish proving the identity of the shooter by his testimony. Since the appellant admitted shooting both victims, the

1. The United States Supreme Court has held that a photograph or live line up which has only the accused wearing clothing similar to that worn by the suspect may be overly suggestive and, as such, constitutionally impermissible. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 1935, 18 L.Ed.2d 1149 (1967).

identity of the shooter was not actually at issue. Therefore, any identification of the appellant by Schroeder was irrelevant.

Notwithstanding the fact that we need go no further in addressing appellant's fourth point of error, we note that appellant additionally fails to meet the burden of proving that the witness' in-court identification was tained by the improper pre-trial identification procedure. As we stated above, the appellant carries the burden of proving by clear and convincing evidence that the witness' in-court identification was tainted by an improper pretrial identification procedure. *Id.* at 448. We hold that the appellant has failed to meet this burden.

■ Schroeder testified that during the shooting, she looked directly into the appellant's face. She further testified that the area where the shooting took place was well lit by some window lights from Monning's Department Store. Given the fact that Schroeder had ample opportunity to view the appellant's face in reasonably well-lit conditions, we cannot say, considering the totality of the circumstances, that Schroeder's in-court identification was tainted by the fact that she saw a suggestive photograph of the appellant. Where a witness has ample opportunity to view the accused and is able to make a positive in-court identification *based upon the prior viewing,* an in-court identification is not necessarily tainted simply because the witness was exposed to an impermissibly suggestive photographic identification procedure. *See generally Williams v. State,* 625 S.W.2d 769 (Tex.App.—Houston [14th Dist.] 1981, pet. ref'd). Appellant's fourth point of error is overruled.

In his third point of error, appellant alleges the State violated a discovery order which had been issued by the trial court. Prior to trial, the appellant had entered a motion requesting the disclosure of all exculpatory material held by the State. The trial court granted the appellant's request.

Appellant contends that the State violated the court's discovery order when the prosecution disclosed the fact that Schroeder was unable to pick the appellant out of the photo spreads, but failed to disclose the fact that she identified appellant in the impermissible photo. Thus, appellant asserts he was "ambushed" by Schroeder's testimony concerning her recognition of the appellant in the impermissible photograph and consequently was also "ambushed" by Schroeder's in-court identification of the appellant. Appellant apparently assumes that Schroeder would have been unable to positively identify appellant at the trial if she had not seen the improper photograph of him at the police station.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court held that the prosecution must give the defendant any evidence it possesses that is favorable to the defendant and material to guilt or punishment. *Id.* at 83 S.Ct. 1196. In *U.S. v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court extended its holding in *Brady* to apply to any evidence held by the State which might be useful for impeachment by the defendant. *Id.* 105 S.Ct. at 3380. To establish a valid *Brady* claim for appellate review, the appellant must show: 1) the suppression of evidence after a request by the defense; 2) such evidence was favorable to the defense; and 3) the evidence was material. *Ransonette v. State,* 550 S.W.2d 36, 39 (Tex.Crim.App.1976).

■ We find that appellant's third point of error is without merit. Initially, we do not find the identification of appellant by Schroeder as the person who shot her friends to be of an exculpatory nature. Information concerning a positive identification of the appellant as the perpetrator, even though the result of a suggestive photograph, tends to incriminate the appellant. There is no right to discover evidence that tends to incriminate the accused. *See generally Quinones v. State,* 592 S.W.2d 933 (Tex.Crim.App.1980) (en banc).

We also find that the information concerning the improper identification proce-

dure was not "material" as required under *Ransonette*. The definition of materiality was set out in *United States v. Bagley*, 105 S.Ct. at 3383–84. In *Bagley*, evidence was said to be material if there is a reasonable probability that the disclosure of the material would result in a different outcome in the trial. *Id.* The reviewing court should assess the possibility that such a result might have occurred in light of the totality of the circumstances. *Id.*

In light of these standards, we fail to see how the information concerning Schroeder's identification could be material to the appellant's defense. It is unlikely that the outcome of the trial could be turned in the appellant's favor by the disclosure of this information. This is especially true in light of our determination made in addressing appellant's fourth point of error; the identity of the appellant as the gunman was not at issue since he admitted shooting both victims. Considering the totality of the circumstances in the case, we find the information concerning Schroeder's identification of the appellant in the photograph to be immaterial. Therefore, the State did not violate the court's discovery order. Appellant's third point of error is overruled.

In his fifth point of error, appellant contends that the prosecutor made improper jury arguments in two instances. Before we address appellant's point of error, we will set out the law applicable to this issue.

■ The purpose of closing argument is to facilitate the jury's proper analysis of the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App.1980). To be permissible, jury argument must fall within one of the following four general areas: 1) summation of the evidence; 2) reasonable deduction from the evidence; 3) answer to argument of opposing counsel; and 4) a plea for law enforcement. *Cannon v. State*, 668 S.W.2d 401, 404 (Tex.Crim.App.1984); *Darden v. State*, 629 S.W.2d 46, 52, (Tex.Crim.App.1982).

■ When an argument exceeds the permissible bounds of the above areas, it will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, is violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceedings. *Bell v. State*, 724 S.W.2d 780, 802–03 (Tex.Crim.App.1986); *Mathews v. State*, 635 S.W.2d 532, 539 (Tex.Crim.App.1982).

■ The test to determine whether improper jury argument is harmless is not whether a conviction could have been had without the improper argument, but whether there is a reasonable possibility that the argument complained of might have contributed to the conviction or the punishment assessed. *Garrett v. State*, 632 S.W.2d 350, 353–54 (Tex.Crim.App.1982); TEX. R.APP.P. 81(b)(2). Stated differently, we must determine whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 187, ——, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144, 157 (1986). In making this determination, we must review the evidence at the guilt/innocence stage as well as that adduced at the punishment phase of the trial. *See Garrett*, 632 S.W.2d at 353–54.

During the closing argument at the punishment stage of the trial, the prosecutor made the following statement:

> Is that the decision this jury wants to send out? You buy your way out of it? We'll put you on probation, as long as you have to pay the victim, it'll be okay. Can anything ever repay Mr. Clemons for his loss? Can any amount of money that this jury or this Judge orders ever repay Mr. Clemons for the loss he has suffered, for not having his adopted son at Christmas, his adopted son at Thanksgiving? Can any amount of money fill that empty seat at the table? I submit to you that it can't. And to think that it possibly could is ludicrous.

According to appellant, this argument by the prosecutor was improper in that it

asked the jury to place itself in the shoes of the victim. *See Chandler v. State,* 689 S.W.2d 332, 335 (Tex.App.—Fort Worth 1985, pet. ref'd).

We note that the appellant's objection at trial was that the prosecutor's statements were criticisms of the laws providing for probation. In his appeal, appellant asserts that the prosecutor made an argument asking the jurors to place themselves in the victim's shoes. Thus, appellant has not provided us with a properly preserved error for review, since the objection lodged at trial must comport with the point of error raised in the appellant's brief. *See Pennington v. State,* 697 S.W.2d 387, 390 (Tex. Crim.App.1985).

■ Regardless of appellant's failure to properly present the error on appeal, we find the argument to be without merit. A jury argument which discusses the suffering of the victim's family is not itself grounds for reversal unless the argument, taken in light of the circumstances of the case, would have materially affected the conviction or punishment assessed. *See Frazier v. State,* 481 S.W.2d 857, 858 (Tex. Crim.App.1972). In the instant case, appellant was convicted of an offense which carried with it a punishment range of 5 to 99 years. In light of the nature of appellant's offense and the 65 years imprisonment assessed, we cannot say with any certainty that the prosecutor's argument led to any harsher penalty than may have been handed down otherwise.

The second instance of improper jury argument complained of by the appellant arose from the following statement of the prosecutor during the punishment phase of appellant's trial:

And where was the kind of place that this Defendant hung out at? Where did he say he liked to go? To Rock Island. What did he tell you about Rock Island? That's a place where there's lots of shooting and people carry knives and stuff. That's what he told you about Rock Island. That was his characterization about the place he hung out.

I submit to you, yeah, there's people over at Rock Island that carry knives, carry weapons and do shootings. This Defendant is one of them. That's the kind of person that makes it a bad place, and that's where he chose to hang out.

And if he's such a peaceable and law-abiding citizen, why does he habitually carry around a handgun?

The appellant duly objected to this statement on the ground that the prosecutor was asking the jury to assess punishment for the collateral offense of unlawfully carrying a handgun.

■ It is well settled that a prosecutor may not make statements during closing argument concerning offenses or acts by the defendant where no evidence has been adduced at trial concerning the extraneous offenses or acts. *See generally Brown v. State,* 530 S.W.2d 118 (Tex.Crim.App.1975). However, a prosecutor may make statements based upon reasonable deductions from the evidence adduced at trial. *Simpkins v. State,* 590 S.W.2d 129, 136 (Tex. Crim.App.1979).

■ While he was on the stand, the appellant was asked why he was carrying a gun on the night of the shooting:

Q. Why were you carrying a gun in Fort Worth in the first place?

A. Because the area where I be at most of the time, there'd be shooting guns and stuff like that, carrying knives.

Q. What area are you talking about when you say that?

A. Rock Island.

Q. That's a pretty rough area?

A. Yes, sir.

.     .     .     .     .

Q. That's the area you said where people are always doing shootings and stuff and got knives and stuff they carry around?

A. Yes, sir.

Q. Is that a place you went to fairly frequently?

A. I don't understand what you're saying.

Q. Did you go there a lot, like everyday? Once a week?

A. Thursdays and Fridays and Saturdays.

Q. Weekends?

A. Yes, sir.

From this testimony, it is reasonable to infer that the appellant had the habit of carrying a handgun several times a week. The appellant's fifth point of error is overruled.

■ In his sixth point of error, appellant contends that he was denied his right to due process of law as guaranteed by both the United States and Texas Constitutions because the same judge did not preside over the appellant's entire trial. According to the appellant, he was denied his right to have his cause tried before a fair and impartial tribunal with a complete knowledge of the proceedings.

As was mentioned above, after Judge Cave resigned his position, Judge Cooke assumed the bench in Judge Cave's place, and presided over the remainder of jury deliberations concerning the guilt or innocence of the appellant and over the entire punishment phase. The appellant contends that since Judge Cooke was not present during the submission of evidence during the guilt/innocence phase of the trial, he was unable to make an informed ruling on the appellant's objection to the prosecutor's argument that the appellant habitually carried a handgun.

We find appellant's argument to be without merit. We have already ruled that the argument complained of by the appellant was a proper deduction from the evidence. In addition, the common law requirement that the same judge preside over a defendant's entire trial has been abrogated by the constitution and statutes of this state. *See Randel v. State*, 153 Tex.Cr.R. 282, 219 S.W.2d 689, 698 (1949). Appellant has failed to demonstrate that he was harmed by the substitution of judges in any meaningful way. Accordingly, appellant's sixth point of error is overruled.

The appellant's conviction is affirmed.