Abel **RAMIREZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–90–00813–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 19, 1991.

David Bires, Houston, for appellant.

John B. Holmes, Dist. Atty., Alan Curry, Asst. Dist. Atty., James Buchanan, Asst. Dist. Atty., Houston, for appellee.

Before MIRABAL, DUGGAN and WILSON, JJ.

## OPINION

MIRABAL, Justice.

A jury found appellant, Abel Ramirez, guilty of the felony offense of delivery of cocaine weighing more than 400 grams. The jury assessed appellant's punishment at 22–years confinement and a fine of $50,-000. We affirm.

Since appellant attacks the sufficiency of the evidence to support his conviction, we summarize the relevant evidence.

Ruben Bazan testified as follows. In December 1989, he was a paid informant working with the Rockport police department, and became involved in a drug transaction when he was called by another infor-

mant, Jaime Gonzales. Gonzales told Bazan to call Benny Trevino because Trevino was looking for some drugs. In this connection, Bazan talked to Trevino two or three times, and to a Mr. Salinas. At one point, the discussion with Trevino was that for five kilos of cocaine, the price would be $18,000 or $20,000.

On December 11, 1989, after Bazan had telephone discussions with Trevino and Salinas, Bazan and Rockport police Officer Lopez met with Trevino and Salinas in a barber shop in Houston, following which, Bazan and Lopez returned to Rockport. Bazan had further phone conversations with Salinas on December 12, 1989, and returned to Houston on December 13, 1989. On that day, Bazan contacted the Department of Public Safety in Houston where Bazan met undercover narcotics officer, Ray Rousett. Rousett, Bazan, and Gonzales proceeded to the barber shop. An arrest and surveillance team also accompanied Rousett to the vicinity of the barber shop. Rousett was equipped with a wireless device so that he could be monitored by the arrest and surveillance team.

Upon arrival at the barber shop, Rousett and Bazan discussed delivery of the cocaine with Trevino and Salinas. To get delivery of the cocaine to the shop, Trevino called Mr. Jimenez who arrived driving a white Lincoln with appellant in the passenger seat. Bazan, Gonzales, Rousett, Jimenez, Trevino, and appellant went in the shop. Jimenez said he had two kilos of "stuff." The price to be paid was $37,000 or $38,000. Jimenez told appellant to bring the stuff from the car. Appellant returned with a bag, took two kilos out, and put it on top of the table. Jimenez opened one of the kilos, took a little bit of the substance on a car key, snorted it, and said it was "the good stuff."

D.P.S. Officer Ray Rousett testified as follows. Upon the arrival of Jimenez and appellant in the white Lincoln, he, Bazan, Gonzales, Trevino, and Jimenez went in the shop. Appellant remained in the Lincoln. Trevino asked Jimenez if he had the cocaine, and he responded that it was outside. Trevino asked him to bring it inside. At that point, Jimenez left. From the shop, Rousett could see Jimenez talk to appellant. Shortly thereafter, appellant followed Jimenez back into the shop. When Jimenez and appellant reentered the shop, appellant took a brown cloth bag from under his jacket and placed it on the counter.

The rest of the facts are taken from the combined testimony of Bazan and Rousett. After one of the bricks was opened and Rousett could see the cocaine, he gave the bust signal, by saying the cocaine looked good to him. However, nothing happened. The wireless device being used to monitor Rousett was apparently not working.

Rousett, Bazan, and Gonzales, under the guise of getting the money from the trunk of their car, eventually went out to their vehicle and gave the secondary bust signal by opening the trunk. The arrest and surveillance team still did not arrive. Rousett discovered Gonzales had a gun in the trunk. Gonzales stated he would assist Rousett in arresting the individuals. Rousett did not like Gonzales' idea, but believed he had no choice. He gave Gonzales instructions on how they would make the arrest. They reentered the shop, drew their weapons, identified themselves, and advised the individuals they were under arrest.

Rousett asked appellant if he was carrying a weapon, and appellant said he was. Rousett searched appellant and found a gun in appellant's inside left coat pocket. The gun was loaded and had one bullet in the chamber. Rousett called the arrest team on the phone, and they arrived shortly thereafter. Rousett testified that exhibit one (the bag) and exhibits two and three (the cocaine) were the items that were delivered to him on the date of the incident.

An analysis of the substance that had been in appellant's possession confirmed it was 4.4 pounds of 87 percent pure cocaine.

As relevant, additional facts will be discussed under various points of error.

In his first point of error, appellant asserts there is insufficient evidence to support his conviction for possession of a controlled substance where the State failed to

show appellant knew the substance inside the bag was cocaine.

■ In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the judgment. *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the entire body of evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *see also Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied*, 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988). The standard of review is the same for both direct and circumstantial evidence. *Geesa v. State*, 820 S.W.2d 154, 161 (Tex. Crim.App.1991); *Sutherlin v. State*, 682 S.W.2d 546, 548–49 (Tex.Crim.App.1984).

■ The evidence viewed in the light most favorable to the verdict is as follows. Bazan testified that appellant was in the shop when Jimenez said that he had two kilos of "stuff" that he would sell for $37,-000 or $38,000. Jimenez then sent appellant out to the car to bring them inside. Rousett testified that when appellant brought the stuff into the shop he was carrying it under his jacket. The fact that an accused attempted to conceal a controlled substance tends to show he knew the illegal nature of the substance. *See Brazier v. State*, 748 S.W.2d 505, 508 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). When appellant brought the substance in and put it on the table, Jimenez scraped a small amount with a key and said it was "the good stuff." Based on testimony that appellant was present when the price of $37,000 or $38,000 for the substance was discussed, the testimony that appellant carried the substance into the shop under his jacket, and was present when Jimenez snorted some of the substance, we conclude a rational trier of fact could conclude beyond a reasonable doubt that appellant knew the substance was cocaine.

We overrule appellant's first point of error.

In his second point of error, appellant asserts there was insufficient evidence to support his conviction for delivery of a controlled substance because the State failed to show there was a transfer of cocaine to any person.

The indictment charged appellant with delivery of a controlled substance by actual delivery, constructive delivery, or offer of sale. The jury was charged on the law of parties.

■ When delivery is by offer to sell, no transfer need take place. *Stewart v. State*, 718 S.W.2d 286, 288 (Tex.Crim.App.1986). The offense is complete when by words or deed, a person knowingly or intentionally offers to sell what he states is a controlled substance. *Id.* A person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, direct, aids, or attempt to aid the other person to commit the offense. TEX.PENAL CODE ANN. § 7.02 (Vernon 1974).

■ Viewing the evidence in the light most favorable to the verdict, Bazan's testimony established that appellant was present when Jimenez offered to sell Bazan, Gonzales, and Rousett two kilos for $37,000 to $38,000. Following Jimenez's offer to sell the kilos, Bazan's testimony establishes that pursuant to Jimenez's instructions, appellant went out to the white Lincoln, retrieved the kilos and brought them into the shop. When appellant got back in the shop, he opened the bag in which he had been carrying the kilos, took the two kilos out, and put them on the table. We conclude, after reviewing the entire record, the evidence is at least sufficient to support a finding, beyond a reasonable doubt, that appellant, with the intent to promote or assist the commission of delivery of a controlled substance by offer of sale, aided Jimenez in the delivery of cocaine by offer of sale.

We overrule appellant's second point of error.

In his third and tenth points of error, appellant asserts the evidence was insufficient to support the finding that appellant used or exhibited a deadly weapon and to justify the trial court's inclusion of a jury instruction on the use of a deadly weapon.

■ The "use" of a deadly weapon during the commission of a felony offense extends to any employment of a deadly weapon, including its simple possession, if such possession facilitated the associated felony. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex.Crim.App.1989). In *Patterson*, at the time the defendant was arrested for possession of a controlled substance, he had a gun concealed between his leg and the couch. He had not pointed it at anyone or threatened anyone with it. The court held he "used" the gun in the sense that it protected and facilitated his possession of the contraband. *Id.* at 942.

■ In the present case, the weapon was loaded and *ready* at hand, if not in appellant's hand, concealed in his inside left coat pocket. No evidence appears in the record to suggest a lawful purpose for the use of the pistol. Appellant controlled the pistol while in close proximity to the contraband. Appellant attempts to distinguish this case from *Patterson* by saying that the pistol in *Patterson*, lodged between Patterson's leg and the couch, was more "useable." We fail to see how the pistol in this case was any less useable while resting in appellant's coat pocket. We conclude from these facts that a rational trier of fact could find that appellant "used" the pistol during the commission of the felony offense of delivery of a controlled substance, in the sense that it protected and facilitated his delivery and management of the contraband. *See Patterson v. State*, 723 S.W.2d 308, 315 (Tex.App.—Austin 1987), *aff'd*, 769 S.W.2d 938 (Tex.Crim.App. 1989); *see also United States v. LaGuardia*, 774 F.2d 317, 321 (8th Cir.1985); *United States v. Moore*, 580 F.2d 360, 361–62 (9th Cir.1978); *United States v. Grant*, 545 F.2d 1309, 1312 (2d Cir.1976). Further, we also find these facts were sufficient to jus-

tify inclusion of a jury instruction on the use of a deadly weapon.

Accordingly, we overrule appellant's third and tenth points of error.

■ In his fourth point of error, appellant asserts the trial court erred in failing to sustain his motion to suppress evidence obtained following an unlawful arrest. Appellant contends that at the time of appellant's arrest, the informant Gonzales was a convicted felon illegally in possession of a firearm, and therefore he committed a felony under TEX.PENAL CODE ANN. § 46.05 (Vernon 1989). Further, even if Gonzales was not a convicted felon, the simple possession of a firearm away from his home was a misdemeanor offense. TEX.PENAL CODE ANN. § 46.02 (Vernon 1989). Therefore, appellant argues, under TEX.CODE CRIM.P.ANN. art. 38.23 (Vernon Supp.1991), which prohibits admission of evidence obtained in violation of state or federal law, the cocaine and firearm seized from appellant should have been suppressed. In his twelfth point of error, appellant asserts the trial court erred in failing to present an instruction to the jury consistent with article 38.23.

■ As a basis for its ruling on a motion to suppress evidence, a trial court may choose to believe or disbelieve any or all of the witnesses' testimony. *Taylor v. State*, 604 S.W.2d 175, 177 (Tex.Crim.App. [Panel Op.] 1980). Because the trial court is the sole trier of fact at a hearing on a motion to suppress, we are not at liberty to disturb any finding that is supported by the record. *Green v. State*, 615 S.W.2d 700, 707 (Tex.Crim.App. [Panel Op.] 1981), *cert. denied*, 454 U.S. 952, 102 S.Ct. 490, 70 L.Ed.2d 258 (1981).

The primary purpose of the exclusionary rule is to deter police activity that could not have reasonably been believed to be lawful by the officers committing same. *Drago v. State*, 553 S.W.2d 375, 378 (Tex.Crim.App. 1977) (citing *United States v. Peltier*, 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1975)). In this case, the factfinder could have reasonably concluded that at the time of the arrest, Rousett had no knowledge of

Gonzales' criminal record. Article 2.14 of the Texas Code of Criminal Procedure, authorizes peace officers to solicit help from citizens. Tex.Code Crim.P.Ann. art. 2.14 (Vernon 1977). Further, Gonzales' arming himself in response to Rousett's request for assistance was authorized under TEX.PENAL CODE ANN. § 9.51 (Vernon 1974), which authorizes citizens to use force to assist an officer in making an arrest. Even though section 9.51 does not expressly exempt citizens from section 46.02, case law indicates that such is the case. *Polke v. State*, 134 Tex.Crim. 496, 118 S.W.2d 793, 794 (1938).

Appellant cites no law that invalidates an otherwise valid arrest due strictly to the fact a citizen who assists the officer illegally possesses a firearm. We hold this case does not present the kind of violation of the law contemplated by art. 38.23. *See Roy v. State*, 608 S.W.2d 645, 651 (Tex.Crim.App. [Panel Op.] 1980).

We overrule appellant's fourth and twelfth points of error.

■ In his fifth point of error, appellant asserts the trial court erred in changing judges during the guilt/innocence phase of trial, resulting in a denial of appellant's right to due process of law and due course of law.

After hearing two days of the State's testimony (that of Rousett and the State's chemist), because of a family commitment, Judge Ted Poe turned the bench over to Judge Dan Walton. Appellant argues the change of judges prejudiced appellant because a motion to suppress was being carried with the trial, Judge Poe had been put on notice appellant intended to submit the question of the legality of the search to the jury under TEX.CODE CRIM.P.ANN. art. 38.23, a motion for determination of entrapment as a matter of law was pending, and there was a question whether the court would instruct a verdict of not guilty for appellant. After appellant's attorney objected to the change of judges on these grounds, Judge Walton stated:

> The Court: All right. The record in this case will reflect there is a court reporter present that recorded all proceedings.

And should the Court find it necessary to review any of the matters referred to by counsel or motions made by counsel, the Court will avail itself of the reporter to read to the Court any pertinent portions of the testimony.

In fact, when presented with appellant's entrapment claims and a motion for instructed verdict, the judge withheld his rulings until he had reviewed the transcription of the court reporter's notes.

■ District judges may hold court for each other when they may deem it expedient. TEX.CONST. art. V, § 11. This constitutional provision confers broad discretionary powers on district judges to hold court for each other. *Randel v. State*, 153 Tex. Crim. 282, 219 S.W.2d 689, 697–98 (1949); *see Medina v. State*, 743 S.W.2d 950, 960 (Tex.App.—Fort Worth 1988, pet. ref'd); *cf. Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 845–47 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

As discussed in this opinion under appellant's other points of error, none of the complained of rulings of the substitute judge were erroneous. Appellant has not shown he was harmed by the substitution in any meaningful way, and therefore has not presented grounds for reversal. *Bright v. State*, 306 S.W.2d 899, 901 (1957); *Medina*, 743 S.W.2d at 960; TEX.R.APP.P. 81(b)(2).

We overrule appellant's fifth point of error.

■ In his sixth point of error, appellant asserts the trial court erred in denying appellant's motion for mistrial arising from the introduction of testimony by the prosecution after it had already been ruled inadmissible.

During the prosecutor's direct examination of Rousett, he sought to elicit testimony from him concerning negotiations he had with Trevino and Salinas that eventually led to the transaction involving appellant. The proffer of this testimony was made outside the presence of the jury. The trial court sustained appellant's objection to the testimony regarding heroin. The ruling was made by the trial court in

Rousett's presence following his testimony outside the presence of the jury. During cross-examination of Rousett by one of the co-defendants' trial attorneys, the following occurred:

Q: Now what can you tell us about Augustin Trevino?

A: He's the one that was setting up the transaction with the drugs.

Q: What else do you know about him?

A: Other than that he had been arrested before.

Q: A lot of times, few times?

A: He was out on parole. At least that's what the informant advised.

Q: And you did talk to Mr. Trevino about *drugs*, didn't you?

A: Yes, sir.

Q: Very *specific* conversations?

A: About the heroin, yes, sir.

Mr. Bires [counsel for appellant]: Objection. I object to that response.

The Court: What grounds?

Mr. Bires: It's interjecting an extraneous offense to which my client has absolutely no connection. This officer's been put on notice. The State's been put on notice. It was an unresponsive answer, and I object to it and ask for the instruction.

The court: Well, that's sustained. Disregard the nonresponsive portion of the statement. Don't volunteer information.

The witness: Yes, sir.

Mr. Bires: And I'm going to move for a mistrial at this point as to Abel Ramirez.

The Court: Denied. Mr. Libbe, continue.

(Emphasis added.)

As a general rule, any error in admitting improper testimony may be cured by the trial court's withdrawal of the evidence and its instruction to the jury to disregard. *Cavender v. State*, 547 S.W.2d 601, 603 (Tex.Crim.App.1977). However, in extreme cases where it appears that the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on their minds, the error of admission is not cured by the instruction. *Crawford v. State*, 603 S.W.2d 874, 876 (Tex.Crim.App.1980); *Lee*

*v. State*, 779 S.W.2d 913, 916 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd).

Appellant argues "Not only did Rousett's non-responsive answer violate the court's order, it interjected evidence of an extraneous offense. This gross violation of the court's ruling resulted in harm to appellant as a matter of law.... [and] there could be no cure by the judge's instruction to the jury."

First, it is not clear that Rousett's testimony concerning the heroin was unresponsive. Counsel for appellant's co-defendant (not the prosecutor) asked Rousett about "drugs," not cocaine in particular. Further, defense counsel's follow-up question asked about "specific" conversations. Secondly, the testimony concerning conversations about heroin related to conversations between Rousett and Trevino, not conversations between Rousett and appellant. Before the rules relating to the admissibility of extraneous offenses come into play, there must be some type of inadmissible evidence presented of the *accused's* prior criminal conduct for error to be present. *Baxter v. State*, 645 S.W.2d 812, 815 (Tex.Crim.App.1983); *Roach v. State*, 586 S.W.2d 866, 868 (Tex.Crim.App. 1979); *see also Harris v. State*, 738 S.W.2d 207, 224 (Tex.Crim.App.1986); *McKay v. State*, 707 S.W.2d 23, 31–32 (Tex.Crim.App. 1985).

It is presumed that the jury will obey an instruction to disregard erroneously admitted testimony. *Waldo v. State*, 746 S.W.2d 750, 753 (Tex.Crim.App.1988); *Gardner v. State*, 730 S.W.2d 675, 696 (Tex.Crim.App.1987); *see also Paster v. State*, 701 S.W.2d 843, 848 (Tex.Crim.App. 1985). We hold appellant has not rebutted that presumption.

We overrule appellant's sixth point of error.

In his seventh point of error, appellant asserts the trial court reversibly erred in failing to find entrapment as a matter of law. In his eleventh point of error, appellant asserts the trial court erred in failing

to charge the jury on the defense of entrapment.

The Texas Penal Code provides:

It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.

Tex.Penal Code Ann. § 8.06(a) (Vernon 1974). The issue is whether appellant was induced to engage in the alleged penal conduct through persuasion or other means likely to cause persons to commit the offenses, or merely was afforded an opportunity to commit them. *Sebesta v. State*, 783 S.W.2d 811, 814 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd).

█ In this case, informants Bazan and Gonzales dealt with Trevino and Salinas. To get delivery of the cocaine, Trevino called Jimenez. Appellant accompanied Jimenez. There is no evidence in the record of dealings between Bazan, Gonzales, or Rousett and appellant, concerning the delivery of cocaine. Thus, appellant was not induced to deliver cocaine by the State or its agents. In Texas, there is no vicarious entrapment defense. *Norman v. State*, 588 S.W.2d 340, 345–46 (Tex.Crim. App. [Panel Op.] 1979).

We thus hold it was not error to find no entrapment as a matter of law, nor in refusing to charge the jury on the defense of entrapment. Accordingly, we overrule appellant's seventh and eleventh points of error.

In his eighth point of error, appellant asserts appellant was denied due process of law because the conduct of the police was so outrageous and overreaching.

█ When governmental involvement in criminal activities reaches "a demonstrable level of outrageousness," a defendant's conviction resulting from such outrageousness will be set aside as a violation of his right to due process of law. *See United States v. Twigg*, 588 F.2d 373, 380–81 (3rd Cir.1978).

█ Appellant points to Rousett's solicitation of Gonzales' armed assistance in making the arrest as conduct so outrageous it amounted to a denial of appellant's due process. The record shows that Rousett's original plan for making the arrest was with the use of an arrest team of other officers. He gave the primary and then the secondary bust signal to trigger their assistance. The record shows that when these plans failed, Gonzales volunteered to assist Rousett. Rousett did not like the idea, but under the circumstances he felt he had no alternative. Section 9.51 of the Texas Penal Code authorizes citizens to assist officers in making arrests under the appropriate circumstances. Tex.Penal Code Ann. § 9.51 (Vernon 1974). We have already held that Rousett's situation authorized Gonzales to assist Rousett under section 9.51. Further, regarding the informants', Bazan's and Gonzales' negotiations to secure the cocaine, those negotiations were not carried out with appellant, but rather with Salinas and Trevino. We do not find that the conduct of the police in this transaction with appellant constituted outrageous conduct.

Accordingly, we overrule appellant's eighth point of error.

█ In his ninth point of error, appellant asserts the trial court committed reversible error in overruling appellant's objection to the court's jury instruction on use of a deadly weapon where the charge failed to include and define the term "exhibit." Appellant argues that the omission of the term "exhibit" constitutes a comment on the weight of the evidence eliminating from the jury's consideration whether there was "use" or "exhibition."

The indictment alleged that at the time of the offense, appellant "used and exhibited a deadly weapon, namely a firearm. . . ." The court instructed the jury by way of special issue,

Now, if you found the defendant guilty of the offense defined in the charge you must determine beyond a reasonable doubt whether or not he used a deadly

weapon, namely a firearm, in the commission of the offense....

'Used' means any employment of a deadly weapon, even its simple possession if such possession facilitates the associated felony.

 The Texas Code of Criminal Procedure provides that when it is shown that the defendant "used *or* exhibited" a deadly weapon during the commission of a felony, the trial court shall make an entry to that effect in the judgment. TEX.CODE CRIM. PROC.ANN. art. 42.12 § 3g(a)(2) (Vernon Supp.1991). (emphasis added). This language of the statute is cast in terms of the disjunctive. A finding of "use" or "exhibition" will suffice to meet the statute's requirement. Under such circumstances, it is not error to omit one of the ways the defendant was connected with the weapon, especially when there is no evidence of that method (i.e. "exhibition" in this case). *See Hill v. State*, 625 S.W.2d 803, 808–809 (Tex. App.—Houston [14th Dist.] 1981), *aff'd*, 640 S.W.2d 879 (Tex.Crim.App.1982).

We overrule appellant's ninth point of error.

We affirm the judgment.

DUGGAN and WILSON, JJ., also sitting.