NO. 07-02-0527-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 2, 2004

_____

JEROME NELSON,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-438,441; HON. JIM BOB DARNELL, PRESIDING

_____

*Opinion*

_____

Before QUINN, REAVIS, and CAMPBELL, JJ.

Appellant Jerome Nelson contests his conviction for aggravated robbery in seven issues.[1]  We affirm the judgment.

### *Background*

On October 25, 2000, Robert Roberson was working as manager of a Town and Country convenience store in Lubbock.  While talking to one or more customers, he

_____

[1]The seventh issue is presented for the first time in appellant's supplemental brief.

observed two black men walk by outside the store. Soon thereafter, the same two men entered the store and walked straight to the counter. When Roberson asked how he could help them, appellant placed a handgun on the counter and pointed it at Roberson. The other robber then walked behind the counter in search of and taking whatever money he could find. Both men left the store, and Roberson called the police.

Based upon information obtained from an informant, an arrest warrant was issued for both appellant and his compatriot. The warrant was executed, and after his arrest, appellant gave a written statement inculpating himself.

### Issue One - Probable Cause for Affidavit

In his first issue, appellant argues that his arrest violated the federal and state constitutions. This is allegedly so because the affidavit accompanying the application for the arrest warrant failed to show probable cause, and it failed to show probable cause since it lacked information establishing the informant's reliability. We overrule the issue for several reasons.

First, in support of his contention, appellant relies extensively on evidence developed at a hearing upon his motion to suppress. Yet, that evidence is irrelevant. This is so because, when determining the existence of probable cause, our review is limited to the four corners of the affidavit supporting the request for the warrant and the reasonable inferences that can be drawn from it. *Lagrone v. State,* 742 S.W.2d 659, 661 (Tex. Crim. App. 1987), *cert. denied,* 485 U.S. 937, 108 S.Ct. 1115, 99 L. Ed.2d 276 (1988); *State v. Ozuna,* 88 S.W.3d 307, 310 (Tex. App.–San Antonio 2002, pet. ref'd). So, we cannot consider the evidence tendered at the hearing.

2

Next, to be adequate, the affidavit must provide a magistrate with sufficient information to conclude that probable cause exists to believe the accused committed an offense. *McFarland v. State,* 928 S.W.2d 482, 509 (Tex. Crim. App. 1996), *cert. denied,* 519 U.S. 1119, 117 S.Ct. 966, 136 L. Ed.2d 851 (1997); *Brooks v. State,* 76 S.W.3d 426, 431 (Tex. App.–Houston [14th Dist.] 2002, no pet.). While probable cause requires more than mere suspicion, the affiant need not present evidence establishing the suspect's guilt beyond reasonable doubt or by a preponderance of the evidence. *Moss v. State,* 75 S.W.3d 132, 138 (Tex. App.–San Antonio 2002, pet. ref'd). He need only illustrate that there is a reasonable probability that the accused committed an offense. And, whether that standard has been met depends upon the totality of the circumstances. *Id.* at 138; *Boley v. State,* 16 S.W.3d 95, 97 (Tex. App.–Houston [1st Dist.] 2000, no pet.). Furthermore, two of the circumstances to be considered when the affiant grounds his statements on representations by an informant are the reliability or veracity of the informant and the basis of his knowledge. *State v. Ozuna,* 88 S.W.3d at 310; *Martin v. State,* 67 S.W.3d 340, 344 (Tex. App.–Texarkana 2001, pet. ref'd). Though being two considerations, they are not independent requirements of a valid affidavit, however. *State v. Ozuna,* 88 S.W.3d at 310. In other words, both need not be proved for the affidavit to be valid. Additionally, a deficiency in one may be offset by a strong showing of the other. *Martin v. State,* 67 S.W.3d at 344. With this said, we turn to the situation before us.

As described in the affidavit and its attachments presented to the magistrate, the informant identified, by name, each robber who appeared on the tape of the Town and Country robbery. So too did he not only describe who actually owned the jacket being worn by one of the suspects but also told the affiant that he (the informant) was "present

3

when [the] suspects bragged about doing this robbery." Authority assigns greater weight to an informant's utterances when he personally observed the act which he discloses. *See State v. Ozuna*, 88 S.W.3d at 310 n.1, *citing Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (stating that ". . . even if some doubt exists as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles the tip to greater weight than might otherwise be the case"). And, though the informant at bar may not have personally witnessed the actual robbery by appellant and his partner, he nonetheless personally heard them admit to it through their braggadocio. So his reiteration of the admission is entitled to greater weight.

Moreover, the comment not only illustrates the basis of his knowledge about who committed the offense but also provides additional grounds illustrating why he was able to identify each robber seen in the video; simply put, he knew who they were because, among other things, he was present when they bragged about committing the offense. To this, we add his identification of the true owner of the coat worn by one malfeasant, which evidence in turn supports the inference that he had some other personal acquaintance with the robbers. So, in short, this rather strong evidence illustrating the basis of the informant's knowledge offsets any lack of evidence in the affidavit regarding his reliability.[2]

Finally, when someone brags about committing a particular criminal act and that admission is relayed to an independent magistrate via affidavit, it is within the realm of

---

[2]This is not to suggest that the affidavit was devoid of all evidence tending to paint the informant as reliable. Indeed, one can reasonably infer from the affidavit that he was in the presence of the police when the identification was made. A face-to-face meeting such as this is an indicia suggestive of credibility since the officer may then readily identify the informant should his utterances prove deceitful. *United States v. Jenkins,* 313 F.3d 549, 554-55 (10th Cir. 2002) *cert. denied*, 538 U.S. 1006, 123 S.Ct. 1917, 155 L.Ed.2d 838 (2003).

common sense to conclude that there exists a reasonable chance that the braggart did that about which he brags. So, we cannot say the affidavit at bar lacked adequate basis to support an inference that there existed a reasonable probability that appellant committed the robbery. In other words, we cannot accept the proposition that the affidavit failed to demonstrate sufficient probable cause to arrest appellant.

### *Issue Two - Ineffective Assistance of Counsel*

In his second issue, appellant attacks the trial court's failure to grant his motion for new trial due to the ineffectiveness of his trial counsel. That is, because his attorney allegedly failed to object to an in-court identification of appellant by Roberson, counsel was deficient. Furthermore, the identification was allegedly objectionable because the prosecutor showed Roberson photos of the appellant and his accomplice shortly before trial. This purportedly constituted an unreasonably suggestive photo array. We overrule the point.

Among other things, the record illustrates that neither defense counsel nor the trial court were aware of the suggestive photo array having been shown to Roberson until after he identified appellant at trial. Having been unaware of the circumstance, counsel can hardly be faulted for withholding objection to conduct of which he knew not.

Moreover, even if trial counsel uttered no objection, the trial court nonetheless conducted a hearing to determine the legitimacy and effect of the photo spread. It did so after trial counsel discovered, through cross-examining Roberson, that the latter had been shown the pictures. And, though the trial court held that the spread was impermissibly suggestive, it nonetheless concluded that the procedure did not taint Roberson's identification of appellant. So, appellant actually was afforded that which his counsel

5

supposedly failed to obtain for him, *i.e.* an opportunity to contest the validity of both the State's conduct and Roberson's identification.  Thus, we find no prejudice, especially in view of appellant's own admission of guilt via a statement given to the police and admitted into evidence.

### Issue Three - Brady Violation

The prosecutor's conduct alluded to in issue number two also underlies the complaint raised in issue three.  There, appellant alleges that the State violated the rule of *Brady v. Maryland*,  373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), since it failed to disclose, prior to trial, that photographs of appellant and his accomplice had been shown to Roberson immediately before trial.  We overrule the issue for several reasons.

First, and assuming *arguendo* that the prosecutor's conduct evinced a *Brady* violation, the appellant was obligated to request a continuance.  His failure to do so resulted in a waiver of the complaint.  *Taylor v. State,* 93 S.W.3d 487, 502 (Tex. App.–Texarkana 2002, no pet.); *State v. DeLeon,* 971 S.W.2d 701, 706-07 (Tex. App.–Amarillo 1998, pet. ref'd); *Cohen v. State,* 966 S.W.2d 756, 763 (Tex. App.–Beaumont 1998, pet. ref'd).

Second, before reversal of the conviction is warranted under *Brady*, the defendant must establish that in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different if the evidence had been disclosed.  *Hampton v. State,* 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).  Here, appellant gave the police a statement wherein he admitted to committing the offense, and the statement was received into evidence.  Appellant having admitted his culpability, it was and is highly unlikely that disclosure of the State's conduct prior to trial would have created a reasonable probability

6

that the outcome would have differed. *See Medina v. State,* 743 S.W.2d 950, 958 (Tex. App.–Fort Worth 1988, pet. ref'd) (finding the information touching upon the issue of identity immaterial because the appellant admitted to shooting the victims). Indeed, that appellant inculpated himself also removed from question the topic of identity. The latter, therefore, was immaterial for *Brady* purposes. *Id.*

### Issues Four, Five and Six - Deadly Weapon Issues

Via his next three issues, appellant argues, in effect, that the evidence was both legally and factually insufficient to support the jury's finding that he used or exhibited a deadly weapon during the robbery, *i.e.* that he committed aggravated robbery. We overrule the issues.

The State charged appellant with having used and exhibited a deadly weapon, the latter being a firearm. Before us, appellant argues that the State failed to prove this allegation since it presented no evidence that the item utilized was capable of causing death or serious bodily injury. Yet, the record contains some evidence upon which a jury could rationally conclude beyond reasonable doubt that the appellant actually exhibited a handgun or firearm; indeed, Roberson described the weapon as a "semiautomatic pistol." And, since a firearm or handgun is a deadly weapon *per se, Lafleur v. State,* 106 S.W.3d 91, 99 (Tex. Crim. App. 2003); *Arthur v. State,* 11 S.W.3d 386, 389 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd), the State was not required to tender evidence illustrating that the weapon was capable of causing death or serious bodily injury. *Thomas v. State,* 821 S.W.2d 616, 619-20 (Tex. Crim. App. 1991).

As for the statement by appellant that the weapon was not a firearm at all but rather a BB gun, we do not find it of such ilk to render the verdict factually insupportable.[3] Again, Roberson testified that the weapon was a semiautomatic pistol and that he believed it to be a real gun that could kill him. So too did an officer testify that the weapon "was a handgun," though he also conceded that a BB gun could look like a handgun and that he did not know if the weapon was actually a firearm or a BB gun. Thus, the jury had before it a disputed issue of fact. And, in resolving the matter, it could have opted to disbelieve appellant's testimony and instead accept that illustrating the weapon to be an actual firearm. *See Edwards v. State,* 10 S.W.3d 699, 701-02 (Tex. App.–Houston [14th Dist.] 1999, pet. dism'd) (holding that testimony from the victims that the defendant used a gun that resembled a Colt .45 handgun rather than a BB gun allowed the jury to make a reasonable deduction that the gun was a firearm).

In short, the finding that appellant used or exhibited a deadly weapon in the robbery enjoys the support of both legally and factually sufficient evidence. And, because it does, the finding that he committed aggravated robbery (as opposed to mere robbery) also is supported by both legally and factually sufficient evidence.

### Issue Seven - False or Reckless Statements in Affidavit

Finally, in his seventh issue (presented via a supplemental brief), appellant again attacks the legitimacy of the arrest warrant. This time, however, he posits that it should have been invalidated since it was obtained through the intentional or reckless use of false statements. The latter were purportedly uttered by Detective Sutton, the detective to whom the informant identified appellant and his accomplice. Furthermore, the statements were

---

[3]The weapon does not appear as an exhibit in the appellate record.

supposedly false since the informant later denied identifying the individuals and the video tape was not of such quality and kind to permit one to see and, thereby, identify the people captured on it. We overrule the issue.

The statements referred to appear in a report attached to the affidavit discussed in issue one above. They consist of the following:

> On 11-28-01 this investigator received information through S.I. (01-03) that provided information to the identity of the suspects in this case.
>
> S. I. . . . advised that the identity of the suspects are Jason Lawson and Jerome Nelson. S.I. . . . viewed the video tape that was obtained in this case and positively identified the suspects in this case.
>
> S.I. . . . also informed this investigator that Jason Lawson was the person who went behind the counter with the clerk. He stated that the white jacket worn in the video has the words 'FUBU' on the back. The jacket belongs to Alvin Lawson but Jason Lawson is the one wearing it. The subject was also wearing a red cap. The stocky suspect at the counter holding the gun is identified as Jerome Nelson. S.I. . . . advised this subject is a parolee.
>
> S.I. . . . informed that they were present when suspects bragged about doing this robbery. S.I. . . . advised suspects are robbing various businesses throughout Lubbock. S.I. . . . said Jerome Nelson is wearing white and blue FUBU shoes in the video. . . .

As can be seen from them, Sutton simply indicated that the S.I. saw the video. Nowhere in it did he state that the S.I. identified the suspects solely from the images appearing on it or that one could identify the suspects merely from their appearance in the video. Indeed, the officer actually testified, at a later hearing, that the informant had provided him with the information about how the robbery occurred and who went behind the counter before being shown the tape.[4] So too did he testify that despite the quality of the tape, it

---

[4] Appellant attempted to establish at trial that the video had been released to the press and the informant could have viewed the video prior to talking to police. However, the informant denied to police that he had previously seen the robbery.

9

would have provided sufficient information to identify the suspects if the viewer already knew them. This coupled with his other testimony that the informant stated he had been told by the suspects that they had committed the robberies, that the informant then watched the video and recognized the clothing, build, and features of the suspects, and that the informant stated: "[t]hat is them. I [would] know them anywhere" could reasonably lead one to conclude that the informant was not identifying the suspects due to what he saw in the video. Rather, it could be reasonably deduced that the informant could identify them due to his prior knowledge about the offense, who committed it, and what the culprits were wearing at the time.

Sutton did concede, at the hearing, that he did not believe the shoes appellant was wearing were visible in the tape, though the informant said appellant was wearing them. Yet, there is no showing that the officer knew of or should have noticed the discrepancy between the informant's statement and the contents of the tape when writing his report. *See Dancy v. State,* 728 S.W.2d 772, 783 (Tex. Crim. App. 1987), *cert. denied,* 484 U.S. 975, 108 S.Ct. 485, 98 L.Ed.2d 484 (1987) (holding that a misstatement resulting from negligence or inadvertence does not render a warrant invalid); *Brown v. State,* 831 S.W.2d 847, 848 (Tex. App.–Dallas 1992), *aff'd,* 870 S.W.2d 53 (Tex. Crim. App. 1994) (holding the same).

Next, and to the extent that the informant later denied making the identification, the circumstance raised an issue of credibility. That is, the trial court became obligated to decide who to believe. And, since this was a matter of a witness' credibility, we must defer to the selection made by the trial court. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.

10

Crim. App. 1997) (requiring us to defer to the trial court's credibility choices). And, the trial court obviously selected Officer Sutton.

In sum, appellant failed to establish by a preponderance of the evidence that Sutton's statement with respect to the informant's identification was intentionally false or made with reckless disregard for the truth. Thus, we again hold that the trial court did not abuse its discretion in overruling appellant's motion to suppress.

Accordingly, the judgment of the trial court is affirmed.


Brian Quinn
Justice

Do not publish.